UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

EDDIE TURNER,

      Plaintiff,

v.                                Civil Action No. 2:14-9185

SPEEDWAY LLC, a foreign corporation,

      Defendant.

MEMORANDUM OPINION AND ORDER

      Pending is the motion for summary judgment of defendant Speedway LLC ("Speedway"), filed December 22, 2014.

I.   Background

      Plaintiff Eddie Turner ("Turner"), a West Virginia citizen, instituted this action by filing a complaint in the Circuit Court of Logan County, West Virginia on December 20, 2013.  On February 10, 2014, Speedway, a limited liability company whose sole member is a citizen of Delaware, filed a timely notice of removal, invoking the jurisdiction of this court on the basis of diversity of citizenship.  28 U.S.C § 1332.

      Turner's complaint alleges that on January 13, 2012, he was injured after slipping on liquid in the parking lot of a

Speedway gas station in Wilkinson, West Virginia.  Pl. Compl. ¶ 3.  He contends that Speedway was negligent in failing to keep the parking lot "in good repair and otherwise safe for its customers so that they would not fall."  Id. at ¶ 4.  Turner alleges that the fall caused injuries to his right hip, right elbow, lower back, neck, and head.  See Def. Mem. of Law in Supp. Mot. for Summ. J. at * 2 (citing Turner's answers to interrogatories and his deposition).  Turner further asserts that the fall was the cause of, or contributed to, stroke symptoms, a skull fracture, headaches, pain in his feet, difficulty walking, change in eating habits due to stomach pain, and loss of sleep.  Id.

Turner has an extensive history of medical issues that predate the fall.  He suffered at least two work-related injuries to his back for which he received workers' compensation benefits.  Id.  He underwent surgery in the 1980s to remove several discs from his neck, which resulted in his missing work for at least a six month period.  Id. at 2-3.  He currently receives Social Security disability benefits (beginning in the 1990s, according to the defendant) for a heart condition, and noted in his application for Social Security benefits that injuries to his lower back significantly limited his ability to engage in physical activity.  Id. at 3.  Other medical records

2

indicate that Turner has been dealing with chronic neck and back pain for approximately 30 years, that he has an injured knee which impairs his ability to walk, and that he has a history of alcohol and substance abuse.  Id. at 3-4.[1]

The first amended scheduling order, entered on August 20, 2014, directed Turner to make expert disclosures by October 9, 2014.  The order also directed that discovery would close on December 8, 2014.  Turner did not file any disclosures by either date.

A pretrial conference was held on March 20, 2015. Turner's failure to provide expert disclosures was the primary issue discussed during that conference.  In view of his counsel's misunderstanding of the applicable rules, the court afforded Turner a second opportunity to comply with the rules by extending the deadline for expert disclosures until April 24, 2015.  On April 27, 2015 Turner's counsel informed the court's law clerk by telephone that he had spoken to his intended expert, Dr. John Orphanos ("Dr. Orphanos"), who declined to be

---

[1] Turner does not dispute this rendition of his medical history. See Pl. Resp. to Def. Mot. for Summ. J. at * 2, 5-6 (noting that "Plaintiff has had a long-standing history of complaints of, among other things, neck and back pain" and conceding that "it is true that certain of Plaintiff's symptoms alleged in the fall . . . were present as early as the 70's, 80's and 90's" and that "it is true, obviously, as previously conceded, that Plaintiff had certain pre-existing conditions").

designated an expert and declined to compile an expert report.
He further advised that no expert disclosures would be filed.
In a subsequent telephone communication with the court, Turner's
counsel maintained that, despite not providing any expert
disclosures, he would, if given the opportunity, seek to elicit
testimony from Dr. Orphanos at trial.  <u>See</u> Tr. of June 10, 2015
Telephonic Conference (ECF 51).

## II.   The Summary Judgment Standard

A party is entitled to summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(c).  Material facts are
those necessary to establish the elements of a party's cause of
action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
(1986).

A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in a
light most favorable to the non-moving party, a reasonable fact-
finder could return a verdict for the non-movant.  <u>Id.</u>  The
moving party has the initial burden of showing — "that is,
pointing out to the district court — that there is an absence of

4

evidence to support the nonmoving party's case." <u>Celotex Corp.</u> <u>v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); <u>id.</u> at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).  Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.

### III.  Discussion

Turner contends that he fell and suffered various injuries due to Speedway's negligence.  West Virginia law dictates that "in a negligence suit, a plaintiff is required to show four basic elements: duty, breach, causation, and damages." <u>Hersh v. E-T Enterprises, Ltd. P'ship</u>, 232 W. Va. 305, 310 (2013) superseded by statute on other grounds as recognized in <u>Tug Valley Pharmacy, LLC v. All Plaintiffs Below In Mingo County</u>, --- S.E. 2d --- (W. Va. May 13, 2015).  Speedway does

5

not concede duty or breach,[2] but for the purposes of this motion,
limits its arguments to the issues of causation and damages.

First, Speedway argues that given Turner's medical
history, causation between the fall and the asserted injuries is
not obvious.  Speedway contends that without expert testimony,
Turner cannot establish causation.  Alternatively, Speedway
argues that, the necessity of an expert notwithstanding, the
evidence offered to prove causation is insufficient to sustain a
verdict in favor of Turner.

Second, Speedway argues that Turner has failed to
produce evidence that establishes any future damages to a
reasonable certainty.  Speedway again argues that expert
testimony is required to meet this evidentiary burden, and that
Turner has not produced such evidence.

To rebut both claims, Turner relies primarily on the
deposition testimony of Dr. Orphanos, one of Turner's treating
physicians.  Turner asserts that Dr. Orphanos's testimony
provides sufficient evidence of both causation and future
damages.  Speedway counters that Turner is precluded from
relying upon that testimony due to Turner's failure to make the

---

[2] **See** Def. Mem. of Law in Supp. Mot. for Summ. J. at * 1 n. 1
("Speedway denies that it breached any duty owed to Plaintiff").

disclosures required by Federal Rule of Civil Procedure 26.  In response, Turner, citing this district's local rules of civil procedure, contends that Dr. Orphanos was not subject to Rule 26's disclosure requirements.

Both of Speedway's arguments for summary judgment rely on the alleged insufficiency of the evidence proffered by Turner.  As Turner relies heavily, though not exclusively, on the deposition testimony of Dr. Orphanos, the court first addresses whether Turner was required by Rule 26 to make any disclosures pertaining to Dr. Orphanos.

### A.

Rule 26 governs discovery disclosures.  It dictates that a party must disclose the identity of any witness who could offer expert testimony or evidence at trial.  Fed. R. Civ. P. 26(a)(2)(A).  The rule further requires the disclosure of the potential contents of an expert's testimony and any evidence the expert may present in one of two forms.  Experts retained solely for the purposes of trial are required to provide a written report detailing the opinions the expert will offer at trial, the basis and reasons underlying those opinions, the facts and data considered while forming them, and a variety of other information pertaining to the expert's background and

7

qualifications.[3]  Fed. R. Civ. P. 26(a)(2)(B).  Experts who fall
outside this first category are subject to a similar, somewhat
less onerous, disclosure requirement:

> (C) <u>Witnesses Who Do Not Provide a Written Report</u>.
> Unless otherwise stipulated or ordered by the court, if
> the witness is not required to provide a written report,
> this disclosure must state:
>
> (i) the subject matter on which the witness is expected
> to present evidence under Federal Rule of Evidence 702,
> 703, or 705; and
> (ii) a summary of the facts and opinions to which the
> witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).  Rule 26 instructs parties to "make
these disclosures at the times and in the sequence that the
court orders."  Fed. R. Civ. P. 26(a)(2)(D).

Turner argues that the local rules of this district
exempt Dr. Orphanos from Rule 26's disclosure requirements.  <u>See</u>
Pl. Resp. in Opp'n at * 10 (citing L. R. Civ. P. 26.1(b)).  The
rule cited in Turner's motion, Local Rule 26.1(b), states in
pertinent part:

> The disclosures described in FR Civ P 26(a)(2)(B) shall
> not be required of physicians and other medical
> providers who examined or treated a party or party's
> decedent unless the examination was for the sole purpose
> of providing expert testimony in the case.

L. R. Civ. P. 26.1(b).  While Turner is correct that Local Rule

---

[3] Although not applicable hear, the same Rule applies to experts
"whose duties as [a] party's employee regularly involving giving
expert testimony."

26.1(b) exempts certain medical professionals from the requirements of Federal Rule 26(a)(2)(B), the plain language of the local rule reveals its purpose: to clarify which of the two disclosure requirements — 26(a)(2)(B) or 26(a)(2)(C) — applies to treating physicians like Dr. Orphanos.  Local Rule 26.1(b) does not override or otherwise alter Federal Rule 26(a)(2)(A)'s general obligation to disclose the names of experts or remove Federal Rule 26(a)(2)(C)'s specific obligation that experts not obligated to provide a detailed report must provide a summary of their expected trial testimony.  Accordingly, to the extent Turner intended to use Dr. Orphanos as an expert and elicit or rely on his medical opinions, he was obliged by the Rules to designate him as an expert witness and provide a summary of the facts and opinions to which he is expected to testify.  He did neither.

The Federal Rules provide a sanction for failing to make a required disclosure.  Rule 37 reads in pertinent part:

> <u>Failure to Disclose or Supplement</u>. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  The advisory committee notes accompanying Rule 37 explain that exclusion of undisclosed expert evidence was intended to be "strong inducement for

9

disclosure" and state that this remedy is available at the summary judgment stage.  See Advisory Committee Notes (1993) to Fed. R. Civ. P. 37(c), see also Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc., 534 F.Supp.2d 616, 622–23 (D. Md. 2008)("Evidence offered to rebut a summary judgment motion may be excluded under Rule 37(c)(1) . . . if the non-moving party has failed to provide the opposing party with proper disclosures and supplements as required by Rule 26."), aff'd, 310 F. App'x 404 (Fed. Cir. 2009).  District courts are afforded "wide latitude . . . to issue sanctions under Rule 37(c)(1)."  Saudi v. Northrop Grumman Corp., 427 F.3d 271, 279 (4th Cir. 2005).

Although the advisory committee notes describe Rule 37 exclusion as an "automatic sanction," the plain language of the rule, as noted, provides that undisclosed evidence will not be excluded if the failure to disclose was harmless or substantially justified.  See Advisory Committee Notes (1993) to Fed. R. Civ. P. 37(c)(explaining that these exceptions were included to "avoid unduly harsh penalties in a variety of situations").  Our Court of Appeals has articulated a five-part test to determine if a party's failure to disclose fits within either exception.  Southern States Rack And Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 595 (4th Cir. 2003).  A district court evaluating the propriety of Rule 37 exclusion

should consider:

> 1) surprise to the opposing party, 2) ability to cure that surprise, 3) disruption of the trial or other instance where the evidence is being relied upon, 4) importance of the evidence, and 5) the non-disclosing party's explanation for its failure to disclose.

Id. at 596. The first four elements relate to the harmlessness of nondisclosure; the fifth to substantial justification. Id. at 597. The non-disclosing party bears the burden of establishing that his failure to disclose is covered by one of the two exceptions. Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014).

Applying the Southern States factors, Turner's failure to disclose cannot be considered either harmless or substantially justified. The court begins by examining the importance of Dr. Orphanos's testimony. It is clear, given Turner's extensive and protracted medical history, that causation would be a major battleground issue at trial and that Turner's extensive and protracted medical history is highly relevant to the inquiry into damages. In his response in opposition, Turner relies heavily on Dr. Orphanos's purported expert opinion to demonstrate the existence of disputed material facts concerning causation and future damages. However, the importance of an expert's testimony is a factor that "must be viewed from the perspective of both parties: The fact that [an]

expert's testimony . . . might have been helpful to [the plaintiff's] case in the eyes of the jury also points out why it should have been disclosed in a timely manner to [the defendant]." <u>Southern States</u>, 318 F.3d at 598-99 (internal quotation marks omitted). Dr. Orphanos's testimony is certainly crucial to Turner's case, but knowing the precise contours of his opinion – and thereby knowing what its own expert must respond to and rebut – is similarly critical to the formulation and structure of Speedway's defense. Accordingly, the importance of the testimony, if it were admissible, is such that the lack of disclosure cannot be regarded as harmless.

Turning to surprise, Turner argues that Speedway cannot claim to be surprised by Dr. Orphanos's testimony because Speedway deposed Dr. Orphanos. However, deposition testimony, standing alone, is not automatically a substitute for expert disclosures. <u>See</u> <u>Cohen v. United States</u>, 100 Fed. Cl. 461, 471-74 (Fed. Cl. 2011)(holding that the plaintiff had not "met his burden to prove that his failure to disclose [the opinion of his expert witness] . . . was substantially justified or harmless" and precluding expert witness from testifying about a theory discussed at his deposition but not disclosed in an expert report), <u>Musser v. Gentiva Health Servs.</u>, 356 F.3d 751, 757 (7th Cir. 2004)(holding that the plaintiff's treating physicians,

disclosed as fact witnesses but not identified as experts, were precluded from offering any expert testimony at trial, even though the defendant had "an opportunity to depose th[e] [physicians] as to their opinions").

Given the inherently sophisticated nature of expert opinion and testimony, deposing an expert witness may or may not provide the deposing party with sufficient information about the expert's opinion to enable adequate preparation for trial. Without the prior disclosure of a written report or summary, deposing counsel may focus on unimportant details or otherwise fail to engage in an inquiry that reveals the opinion or opinions, and the underlying bases, that the expert will offer at trial — a possibility clearly contemplated by the Federal Rules, which prohibit the deposition of an expert subject to Rule 26(a)(2)(B) until after the disclosure of the expert's report.[4]  Fed. R. Civ. P. 26(b)(4)(A).

Alternatively, an expert deposition may reveal a multiplicity of opinions and an accompanying volume of information that makes it difficult or impossible for deposing counsel to accurately predict which opinions or theories the

---

[4] Although Dr. Orphanos was subject to Rule 26(a)(2)(C), not Rule 26(a)(2)(B), the rationale underlying Rule 26(b)(4)(A) remains illustrative of the potential for confusion when a deposition is conducted before expert disclosures have been made.

expert will present at trial.  Without a disclosed report or summary to narrow his focus, diligent counsel would be forced to prepare for all possible opinions and theories, a prospect which greatly increases the potential that short shrift will be given to the opinion or theory that is actually presented at trial.

Either extreme — the deposition that reveals too much, or the one that reveals too little — could result in the opponent being surprised, and therefore prejudiced, by an opinion not disclosed in accordance with Rule 26.  See Contech, 534 F. Supp.2d at 625 (holding that a party is "not required to plan a defense based on all possible documents or information presented during depositions, but rather must be adequately informed by the opposing party, in response to proper discovery requests, which facts, theories, and documents will likely be relied upon at trial.").

The case at hand provides a concrete example of the deposition that reveals too little: although Dr. Orphanos's deposition testimony touches upon subject matter in which his expert opinion would be highly relevant, there is considerable ambiguity as to the exact nature and scope of the opinion being offered, and what bases he relied upon when formulating that opinion.  Turner admits that during the deposition "Dr. Orphanos could not definitively attribute the accident that is the

14

subject of this suit . . . to the Plaintiff's post-incident complaints." Pl. Resp. in Opp'n to Mot. Summ. J at * 5. However, he argues that "while Dr. Orphanos . . . stated [that] in the absence of certain record review . . . causation . . . between the fall and the prior history could be complex, he also later testified to, essentially, a formula wherein the picture would become much clearer." Id. at * 13. Thus, while Turner acknowledges that at first glance Dr. Orphanos's testimony appears inconclusive, Turner argues that a careful parsing reveals an opinion capable of being fully presented at trial.

A review of Dr. Orphanos's deposition testimony serves to reinforce the notion that Speedway could be surprised by Dr. Orphanos's testimony at trial. At various points, Dr. Orphanos responds with what is best described as an ambiguous hedge concerning the causal link between Turner's fall and his alleged injuries. Compare Dep. Test. of Dr. Orphanos at 33-35 with id. at 42-44.[5] Although at no point does Dr. Orphanos definitively state his medical opinion concerning causation, he makes several statements that arguably qualify as such, and he makes reference to the facts and evidence that would allow him to more fully enunciate such an opinion, if he has an acceptable one. Id.

---

[5] The entirety of Dr. Orphanos's deposition testimony is attached as "Exhibit O" to Turner's Response in Opposition. (ECF 33-16).

Dr. Orphanos's deposition testimony demonstrates quite clearly why a deposition is not an adequate substitute for Rule 26 disclosures inasmuch as Speedway cannot adequately prepare to cross-examine Dr. Orphanos about his opinions based solely on the contents of his deposition.  See Southern States, 318 F.3d at 598 (explaining that the "rules of expert disclosure are designed to allow an opponent to examine an expert opinion for flaws and to develop counter-testimony through that party's own experts.").

        Expert disclosures are intended to facilitate trial preparation and reduce the amount of guesswork in civil litigation.  See Jacobsen v. Deseret Book Co., F.3d 936, 953 (10th Cir. 2002)(explaining that the purpose of Rule 26(a) expert reports is to set forth the substance of what the expert will say during his direct examination and thereby provide an opposing party "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses."), Saudi, 427 F.3d at 278 ("A party that fails to provide [expert] disclosures unfairly inhibits its opponent's ability to properly prepare").  Dr. Orphanos's deposition does not provide the information necessary to enable Speedway to engage in such preparation.  Moreover, it is unclear exactly what opinion, if any, Dr. Orphanos provided

16

during his deposition.  Accordingly, there is considerable potential that an opinion offered by Dr. Orphanos, or the basis of such an opinion, would surprise Speedway at trial.

Finally, Turner has not offered an acceptable explanation for his failure to meet his Rule 26 obligations.  As noted above, Turner incorrectly asserts that he had no obligation to make disclosures pertaining to Dr. Orphanos because treating physicians need not be disclosed under this district's local rules of civil procedure.  Miscomprehension of the rules is not a substantial justification that will excuse total non-compliance with the requirements of Rule 26, and, notwithstanding a second chance to do so, Turner has offered no other explanation for his failure to disclose.

Turner has not provided expert disclosures as required by Rule 26, even after being granted an extension of the deadline.  He has done nothing to establish that this noncompliance was harmless or substantially justified.  Having failed to demonstrate the applicability of either exception, the appropriate Rule 37 sanction for his failure to disclose is exclusion.  Accordingly, Dr. Orphanos's expert testimony, to the extent it would purport to link causation and injury, is excluded and will not aid Turner in opposing Speedway's motion for summary judgment.

B.

        The court turns to the substance of Speedway's motion
for summary judgment.  Speedway argues that Turner has not and
cannot put forth sufficient evidence to satisfy West Virginia
law concerning the causation and damages elements of a
negligence claim.  If the evidence proffered by Turner does not
meet the requirements of West Virginia law then there can be no
dispute of material fact concerning that element and summary
judgment in Speedway's favor is appropriate.

        a.  Causation

        When pursuing a negligence claim, the burden of
demonstrating causation falls on the plaintiff.  As the West
Virginia Supreme Court of Appeals explained in <u>Walton v. Given</u>:

> It is an elementary principle of law that negligence
> will not be imputed or presumed. The bare fact of an
> injury standing alone, without supporting evidence, is
> not sufficient to justify an inference of negligence.
> The burden is on the plaintiff to prove by a
> preponderance of the evidence that the defendant was
> negligent and that such negligence was the proximate
> cause of the injury.

58 W. Va. 897, 902 (1975).  Satisfying this burden requires the
plaintiff to produce evidence tending to show that a defendant's
acts were the cause of any alleged injury; mere possibility is
not enough.  "The law is clear that a mere possibility of

18

causation is not sufficient to allow a reasonable juror to find causation." Tolley v. ACF Industries, Inc., 212 W. Va. 548, 558 (2002).

West Virginia does not generally require causation to be established by expert evidence. See Smith v. Slack, 125 W.Va. 812 (1943)("Direct testimony, expert or otherwise, is not always necessary to prove the causal connection between the negligence . . . of a tortfeasor and the injury suffered by his victim."), see also Spencer v. McClure, 217 W. Va. 442, 447 (2005)("expert testimony is not always necessary to prove causation"). However, West Virginia precedent recognizes that under some circumstances, it would be difficult, if not impossible, for a plaintiff who has suffered a physical injury to establish causation without expert evidence. As the West Virginia Supreme Court of Appeals explained in Totten v. Adongay:

> In many cases the cause of injury is reasonably direct or obvious, thereby removing the need for medical testimony linking the negligence with the injury . . . In other instances, medical testimony is warranted to establish the proximate cause link between the claimed negligence and injury.

Totten v. Adongay, 175 W. Va. 634, 640 (1985).

Outside of the context of cases involving a professional standard of care, see e.g., Short v. Appalachian

19

OH-9, Inc., 203 W. Va. 246, 253-54 (1998)(affirming summary judgment for the defendant in a case where the plaintiff failed to produce any expert testimony supporting his claim that the negligence of paramedics and other emergency service personnel was the proximate cause of his child's death), and those involving products liability, see e.g., Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 972 (4th Cir. 1990)(applying West Virginia law, and stating that "[a]n essential element of plaintiffs' cause of action is proof that defendant's vaccine caused plaintiffs' injuries, and proof of causation must be by expert testimony.")(citing Hicks v. Chevy, 178 W. Va. 118, 121(1987)), West Virginia precedent offers little guidance as to what circumstances require a plaintiff to produce expert evidence in order to prove causation.  However, the trend of "[m]odern case law [is to] require[] expert medical testimony to establish causation in cases where the plaintiff has suffered a complex injury."  Smith v. Gen. Motors Corp., 376 F. Supp. 2d 664, 667 (W.D. Va. 2005) aff'd sub nom. Estate of Smith v. Gen. Motors Corp., 179 F. App'x 890 (4th Cir. 2006), see also Driggers v. Sofamor, S.N.C., 44 F. Supp. 2d 760, 764 (M.D.N.C. 1998)("where the injury is complicated . . . expert medical testimony on the issue of causation must be provided")(citing Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 167 (1980), Guevara v. Ferrer, 247 S.W.3d 662, 665 (Tex. 2007)(describing

the "general rule" that "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors."), Bushong v. Park, 837 A.2d 49, 55 (D.C. 2003)(expert medical testimony not required to prove negligence unless a plaintiff's injuries involve a "complex medical question"), Reed v. County of Hillsborough, 813 A.2d 472, 473 (N.H. 2002)("Lay testimony is probative on the issue of physical injury and the cause of that injury only if the cause and effect are so immediate, direct and natural to common experience as to obviate any need for an expert medical opinion.")(internal quotation marks omitted).  This modern trend was succinctly summarized in an opinion by the Supreme Court of North Carolina, which held that:

> [W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.

Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 167 (1980).

Some of the injuries Turner claims were caused by the fall, such as localized pain in his neck, back, elbow, and hip, can be classified as "reasonably direct or obvious," at least to the extent such pain was soon experienced.  See Totten, 175 W. Va. at 640, see also Boggavarapu v. Ponist, 518 Pa. 162, 167 (1988)("[T]here are injuries to which human experience teaches

21

there is accompanying pain."), Ilosky v. Michelin Tire Corp.,
172 W. Va. 435, 446 (1983)(describing the leg pain of the
injured plaintiff as an "obvious injur[y]."). It is well within
the "ordinary experience and knowledge of laymen," Click, 300
N.C. at 167, to conclude that a fall onto the unforgiving
surface of a parking lot could lead directly to such pain, and,
depending on the factual circumstances and the testimony
provided, to somewhat more attenuated symptoms like loss of
sleep and difficulty walking.[6]  Insofar as Turner seeks relief
for obvious injuries, his claims do not fail simply because they
are unsupported by expert evidence.  Still, in order to survive
Speedway's motion, Turner must demonstrate that there is a
material dispute of fact concerning the causation of his obvious

---

[6] For example, to the extent Turner testifies that he lost sleep
or has had difficulty walking because of pain in the regions of
his body which suffered the brunt of the fall's impact, his
testimony may concern an "obvious" injury for which no expert
testimony is required.  See e.g., Bitzan v. Parisi, 558 P.2d
775, 778 (Wash. 1977)("There is no reason laymen may not testify
to their sensory perceptions . . . Physical movement by the
injured person can be seen and described by a layman with no
prior medical training or skill.  Furthermore, an injured person
can testify to subjective symptoms of pain and suffering, and to
the limitations of his physical movements.")(internal citations
omitted).  In contrast, Turner would not be able to rely on his
own testimony to establish the alleged skull fracture inasmuch
as such a condition is generally beyond the ability of a
layperson to diagnose.  See e.g., Roark v. Allen, 633 S.W.2d
804, 809 (Tex. 1982)(holding that "the diagnosis of skull
fractures is not within the experience of the ordinary
layman.").  Such an injury, and others like it, provide an
example of the "complex" or "complicated" medical conditions for
which causation can only be established by expert testimony.

injuries.  To do so, he must point to some evidence tending to show that those injuries were caused by the fall at Speedway.

In his response in opposition, Turner relied heavily on Dr. Orphanos to meet this evidentiary burden.  See generally Pl. Resp. in Opp'n.  For the reasons already discussed, Dr. Orphanos's purported expert testimony linking causation and injury cannot be relied upon.  Moreover, given that Dr. Orphanos was not present when the accident occurred, and that it appears from the record that he was not the treating physician who tended to Turner's injuries in the immediate aftermath of the fall, Dr. Orphanos lacks the personal knowledge necessary to provide relevant, admissible testimony that would help Turner stave off summary judgment with respect to his obvious injuries.  However, Turner's own recollection may suffice.

While Turner does not cite to his own deposition testimony in his response in opposition, several relevant portions of that deposition are attached to Speedway's motion.  See "Turner Dep."[7]  During his deposition, Turner was asked about and discussed his medical history prior to the fall at Speedway, and goes on to discuss the various symptoms he claims were exacerbated by the fall or did not manifest until after the fall

---

[7]The excerpts of Turner's deposition are attached as "Exhibit B" to Speedway's Motion for Summary Judgment. (ECF 28-2).

occurred.  Turner Dep. at 59, 78-84.  Under the standard articulated in Totten, this testimony, standing alone, provides evidence, upon which a reasonable jury could rely, tending to show that a given obvious injury sustained by Turner was caused by the fall.  Cf Morgan v. Compugraphic Corp., 675 S.W.2d 729, 733 (Tex. 1984)("Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the [medical] condition is sufficient proof of causation.").

        As noted, Turner did not cite to his deposition or attach an affidavit to his response to Speedway's motion. Nevertheless, summary judgment based on the alleged insufficiency of evidence is inappropriate if, after a review of the record as a whole, a court determines that the moving party "overlooked a witness who would provide relevant testimony for the nonmoving party at trial."  Celotex Corp., 477 U.S. at 333 (explaining that the presence of such evidence demonstrates that the moving party has not met its "initial burden" and that when the "moving party has not fully discharged its initial burden of production, its motion for summary judgment must be denied"). Speedway has offered no argument as to why Turner cannot rely on his own testimony to establish causation with respect to any obvious injuries.  Speedway has thus not met its burden of

24

demonstrating that the evidence concerning causation of Turner's obvious injuries is legally insufficient.  Accordingly, summary judgment on that basis is not warranted.

### b. Damages

In West Virginia, "a tort plaintiff is entitled to all damages proximately caused by a wrongdoer's actions."  <u>Cook v. Cook</u>, 216 W. Va. 353, 357 (2004).  "[C]ompensatory damages for personal injuries are composed of two broad categories."  <u>Flannery v. United States</u>, 171 W. Va. 27, 29 (1982).  The first category, "liquidated" or "pecuniary" damages, "represent some form of expense or economic loss that can be rendered reasonably certain monetarily by a mathematical figure or calculation."  <u>Id.</u> (explaining that "medical, hospital, nursing, dental, drug and all other similar expenses, both present and future" as well as "lost wages and lost earning capacity" qualify as liquidated).  The second category, "unliquidated" damages, are those damages, like pain and suffering, for which there is "no precise monetary calculation."  <u>Id.</u> (also identifying "permanent injuries" as unliquidated.).  These two categories can be further subdivided into two temporal categories: those damages that have accrued as of the time of the trial, and those that will necessarily be incurred in the future.  <u>Id.</u> at n. 3.

The prayer for relief in Turner's complaint asks for a

judgment against Speedway that will "fully compensate him for his damages." <u>See</u> Pl. Compl.  In the paragraph preceding his prayer, Turner outlines the nature of his alleged damages, stating that as a result of the fall he sustained damages which included:

> temporary and permanent bodily injuries . . . medical bills and related expenses, past, present, and future . . . physical pain and suffering, past, present and future . . . loss of enjoyment of life, past, present and future . . . mental anguish and emotional distress, past, present, and future . . . and inability to conduct his normal activities[.]

<u>Id.</u> at ¶ 5.  With the exception of his claim for medical bills and expenses, which fall in the liquidated class, Turner seems to seek only unliquidated damages.  His prayer also demonstrates that his claim encompasses both accrued and future damages.

The damages Turner has already accrued, liquidated or unliquidated, are subject to proof by competent evidence at trial, and are not the subject of this motion.  <u>See</u> Def. Mem. of Law in Supp. Mot. for Summ. J. at * 15.  Speedway seeks summary judgment with respect to Turner's request for future damages, asserting that he "does not have sufficient evidence upon which a jury could base a future damage award in his favor."  <u>Id.</u> at * 17-18.

"The general rule with regard to proof of damages is that such proof cannot be sustained by mere speculation or

conjecture."  Syl. Pt. 1 <u>Spencer v. Steinbrecher</u>, 152 W. Va. 490
(1968), <u>see also</u> <u>Rodgers v. Bailey</u>, 68 W. Va. 186 (1910)("Actual
damages . . . must be proved. An amount cannot be inferred. 'In
'civil damage cases,' as in ordinary damage cases, the evidence
must afford data, facts and circumstances . . .  from which the
jury may find compensation for the loss suffered by reason of
the injury proved.'")(quoting <u>Carpenter v. Hyman</u>, 67 W. Va. 4
(1910)).  "To ward against speculative, abstract or purely
theoretical claims, the trial court bears the responsibility for
examining the evidence in each case in order to withhold . . .
flawed claims from jury consideration."  <u>Cook</u>, 216 W. Va. at
360.

West Virginia specifically requires that future
damages, including the future effect of permanent injuries, be
proven to a "reasonable certainty."  Syl. Pt. 9 <u>Jordan v Bero</u>,
158 W. Va. 28 (1974)("The permanency or future effect of any
injury must be proven with reasonable certainty in order to
permit a jury to award an injured party future damages.").  In
<u>Bero</u>, the Supreme Court of Appeals explained that future damages
are:

> those sums awarded to an injured party for, among other
> things: (1) Residuals or those future effects of an
> injury which have reduced the capability of an
> individual to function as a whole man; (2) future pain
> and suffering; (3) loss or impairment of earning
> capacity; and (4) future medical expenses.

27

Id. at Syl. Pt. 10, see also Syl. Pt. 2 Flannery, 171 W. Va. at 27.  Discussing the nature of evidence required to prove such damages to a "reasonable certainty," the court said that:

> Where [an] injury is of such a character as to be
> obvious, the effects of which are reasonably common
> knowledge, it is competent to prove either by lay
> testimony from the injured litigant or others who have
> viewed his injuries, or by expert testimony — medical,
> forensic, actuarial, and the like —, or from both lay
> and expert testimony.

Bero, 158 W. Va. at 52-53, see also id. at Syl. Pt. 11.  But the court also held that:

> On the other hand, where [an] injury is obscure, that
> is, the effects of which are not readily ascertainable,
> demonstrable, or subject of common knowledge, mere
> subjective testimony of the injured party or other lay
> witnesses does not prove the future effect of the injury
> to a reasonable certainty. In such [a] situation,
> medical or other expert opinion testimony is required to
> establish the future effects of the injury to a
> reasonable degree of certainty.

Id. (emphasis added).

Read in concert with Flannery, it is apparent that the first two categories of future damages set forth in Bero (residuals, and future pain and suffering) are unliquidated, while the latter two categories (lost earning capacity and future medical expenses) are in the liquidated category.  By their very definition, unliquidated damages are difficult to quantify.  There is no mathematical formula or calculation that can be mechanically applied to determine how much money

28

sufficiently compensates an individual for his mental anguish or his loss of enjoyment of life.  See Hewett v. Frye, 184 W. Va. 477, 480 (1990), Crum v. Ward, 146 W. Va. 421, 429 (1961).  The subjective nature of unliquidated damages does not, however, relieve a plaintiff of his obligation to prove future damages to a reasonable certainty.  See e.g., Hewett, 184 W. Va. at 480. (explaining that an award for "mental anguish" must be "necessarily based upon a subjective evaluation by the jury of the injured individual and the evidence he presents.").  As explained in Bero, when the effects of an alleged injury are "obvious," a plaintiff can satisfy this evidentiary burden without resort to expert testimony.  See also Turner v. Heston, 172 W. Va. 80, 83 (1983)(per curiam) (collecting authority where "[l]ay testimony was found competent and sufficient to support a damage instruction for permanent injury and future pain and suffering.").

Given Turner's extensive and protracted medical history, he may have difficulty convincing a jury, solely on the basis of lay testimony, that it is reasonably certain that he will suffer any future unliquidated damages flowing from any obvious injuries he may have suffered as a result of the fall.[8]

---

[8] See analysis at pgs 22-23, supra.  The court notes that the jury's assessment of the damage ascribable to an injury can only come after the jury has made a positive determination of

Nevertheless, to the extent he is able to produce evidence at trial which establishes such future damage to the necessary degree of certainty, his lack of expert evidence will not prevent him from obtaining recovery for damage so proved.

In contrast, proving future liquidated damages, in this case future medical expenses, requires Turner to satisfy a more stringent evidentiary burden. As the West Virginia Supreme Court of Appeals stated in <u>Bero</u>:

> Proof of future medical expenses is insufficient as a matter of law in the absence of any evidence as to the necessity and cost of such future medical treatment

Syl. Pt. 16, <u>Bero</u>, 158 W. Va. 28. An opinion about the necessity of future medical treatment, and the concomitant cost of such, cannot be offered without scientific or technical training or other specialized knowledge and thus falls into the realm of expert testimony. <u>See</u> Fed. R. Evid. 702. The same can be said of Turner's claim that any obscure injuries caused or exacerbated by the fall are permanent – such a claim requires expert testimony. Given that Turner's failure to comply with Rule 26 precludes him from relying on Dr. Orphanos's proffered expert testimony, as distinguished from his testimony as a

---

causation: that is, the inquiry into damages comes only after the jury has concluded that there is a causal link between the complained-of event and the asserted injury. Syl. Pt. 12 <u>Bero</u>, 158 W. Va. at 28.

subsequent treating physician, Turner cannot provide the type of evidence required to establish either the necessity or cost of any future medical treatment, nor does he appear to have any competent evidence concerning the permanence of any obscure injuries.

### IV.   Conclusion and Order

For the foregoing reasons, it is ORDERED that Speedway's motion for summary judgment be treated as a motion in limine which is hereby granted insofar as it pertains to Turner's prayer for damages compensating him for future medical expenses and the future effects of any obscure permanent injuries; and it is granted to exclude the testimony of Dr. Orphanos with respect to expert opinion linking causation and injury.   The motion is otherwise denied.

The Clerk is directed to transmit copies of this order to counsel of record and any unrepresented parties.

ENTER:   July 15, 2015

John T. Copenhaver Jr.
United States District Judge

31